IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **RACHEL AUTREY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **2:13-cv-00131** |
| **FOOD CONCEPTS INTERNATIONAL,** | : | **Judge Algenon Marbley** |
| **LP,** *et al*, | : | **Magistrate Judge Deavers** |
| | : | |
| **Defendants.** | : | |
| | : | |

## OPINION & ORDER

This matter comes before the Court on Plaintiff's Motion for Attorney's Fees and Costs ("Motion for Attorney's Fees") (Doc. 78), and Plaintiff's Motion Requesting that the Court Take Judicial Notice of the Court's November 9, 2016 Orders in Case Nos. 2:15-CV-2473, 2:15-CV-2596, and 2:15-CV-2597 ("Motion for Judicial Notice") (Doc. 81.) For the following reasons, Plaintiff's Motion for Attorney's Fees is **GRANTED with modifications**, and Plaintiff's Motion for Judicial Notice is **DENIED**.

## I. BACKGROUND

Autrey's original complaint, which is one of more than a dozen related cases against Defendants Del Vecchio, Food Concepts International, LP, and Abuelo's International LP (collectively, "Defendants"), alleged causes of action for sex discrimination, negligent hiring, supervision and retention, intentional infliction of emotional distress, and violation of the Ohio Minimum Fair Wage Standards Act and the federal Fair Labor Standards Act ("FLSA"). (Doc. 1-1.) The original complaint, albeit long, was short on facts pertaining to Ms. Autrey.

Over the next eight months, following multiple requests from Defendants, the Court issued four orders requiring Plaintiff to file an amended complaint that complied with the basic notice requirements of Federal Rule of Civil Procedure 8(a).  (Docs. 9, 15, 17, 30.)  When Plaintiff's counsel finally filed an Amended Complaint on October 15, 2013, it became clear that this Amended Complaint, too, failed comply with the Court's orders and the federal rules.  (Doc. 31).  Consequently, the Court was compelled to order Plaintiffs to show cause why their lawsuit should not be dismissed.  (Doc. 33.)

On October 25, 2013, Plaintiff attached a third version of her complaint to her response to Magistrate Judge Abel's Order to Show Cause, alleging causes of action for: (a) violations of FLSA; (b) breach of contract; (c) retaliation under state and federal law; (d) aiding and abetting discrimination in violation of state law; and (e) a hostile work environment.  (Doc. 34.)  On January 17, 2014, Magistrate Judge Abel conducted an exhaustive review as to whether this third version, as well as similar versions filed in nine related cases, could pass muster under the lenient, notice-pleading standard of Federal Rule of Civil Procedure 8(a).  (Doc. 39.)  Alas, parts of it could not, and Magistrate Judge Abel recommended that Plaintiff's retaliation and aiding and abetting claims be dismissed with prejudice.  (Doc. 39.)  Judge Abel recommended that her FLSA, breach of contract, and hostile work environment claims be allowed to proceed, however. (Doc. 39.)  Neither party objected, and, on February 18, 2014, this Court adopted the Magistrate Judge's Report and Recommendation.  (Doc. 41.)

The next several months were punctuated by discovery disputes, (*see* Docs. 46, 51, 52), Plaintiff's unsuccessful motion for sanctions following a mailing mix-up, (Docs. 49, 55), and Plaintiff's attempt to file a second amended complaint.  (Doc. 53.)  The Magistrate Judge denied Plaintiff's motion for leave to file a second amended complaint on February 18, 2015 (Doc. 61),

and set an amended scheduling order (Doc. 62).  Plaintiff objected to the scheduling order, (Doc. 73), although there was some confusion about whether Plaintiff was actually objecting to something else, perhaps a discovery conference order.  (Doc. 63.)  In any event, this Court overruled Plaintiff's objection.  (Doc. 74.)  Plaintiff also filed a motion for prejudgment attachment of Defendants' assets.  (Doc. 66.)  Following a hearing, the Court denied Plaintiff's motion on July 24, 2015, in part for her counsel's failure to set forth any reasons why prejudgment attachment would be appropriate, in this case or the nine others in which counsel filed the motion.  (Doc. 70 at 5.)

On March 29, 2016, Defendants made a Federal Rule of Civil Procedure 68 offer of judgment to Plaintiff Autrey, offering $1,100 to settle all of her claims against Defendants. (Doc. 76-1).  Plaintiff accepted this offer of judgment on April 3, 2016.  (Doc. 76.)  In the offer, Defendants "offered to pay reasonable attorneys' fee and costs as required by the Fair Labor Standards Act, 29 U.S.C. § 216[,] in an amount to be determined by this Court."  (Doc. 76-1, at 1.)  It is this fee request that is the subject of the instant motion.  (Doc. 78.)  To bolster his request for the Court to set a $275 hourly rate for Attorney Fortune, Plaintiff also filed a Motion for Judicial Notice of an order the Court entered in three other cases.  (Doc. 81.)  Both motions are ripe for review.

## II.  JUDICIAL NOTICE

Under Federal Rule of Evidence 201, the Court may take judicial notice of an adjudicative fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  When "a

3

party requests it and the court is supplied with the necessary information," the Court must take judicial notice.  Fed. R. Evid. 201(c)(2).

Plaintiff requests that the Court take judicial notice of an order the Court entered in three cases with different plaintiffs against the same defendants, and argues that the Court "has been provided all necessary information" to award Attorney Fortune a rate of $275 per hour in this case.  (Doc. 81; Doc. 83 at 3.)  Because Plaintiff requests that the Court take judicial notice of the order, the Court looks to the order in determining whether it meets the requirements of Federal Rule of Evidence 201.

In the order, the Court mediated a settlement dispute among the parties in which both sides compromised with respect to payment terms.  (*See, e.g.*, Case No. 2:15-cv-2473, Doc. 26.) The order provides as follows: "1. Plaintiffs' counsel will return to each Plaintiff the $500 retainer collected for post-settlement proceedings in these matters; 2. The three Plaintiffs will not be responsible for the approximately $7,400 of fees payable for litigation costs indirect to their cases; 3. Defendants will pay $12,400 in additional settlement funds to Plaintiffs, representing post-settlement attorney's fees; and 4. Plaintiffs' counsel will use a portion of this $12,400 payment to pay outside counsel retained for the purpose of conflicts representation."  (*Id.*)  The order does not provide an hourly rate for Mr. Fortune, nor does it delineate the number of hours Mr. Fortune spent working on the matter such that the Court can calculate his hourly rate.

For the purposes of this discussion, the Court will assume, as Plaintiff posits in the instant motion, that Plaintiffs' counsel spent forty-five hours litigating these three cases post-settlement. The order therefore, which mediates "the parties' settlement efforts," provides a payment to Plaintiffs' counsel of $12,400 for fees, *less*: (a) $500 x 3 for retainers (attorney's fees paid in advance); (b) up to $7,400 for additional attorney's fees; and (c) an undisclosed amount for

payment to outside counsel for the purposes of conflicts representation.  (*Id.*)  Taking the figures given in the order—$1,500 for retainers, $7,400 in additional fees and $0 for conflicts representation—Plaintiffs' counsel's net return is $3,500.  Divide $3,500 by 45 hours, and the Court reaches $77.78, not $275, per hour.  This, likely, is not Plaintiff's counsel's preferred outcome, and the assumptions required to reach it illustrate the fact that the Court does not have the "necessary information" to take judicial notice of the order.

Because the Court does not have the information necessary to take judicial notice of the order in the Klimek, Thomas, and Epperly cases[1] such that Mr. Fortune emerges with a $275 per hour rate, the Court declines to take judicial notice of the order.  Therefore, Plaintiff's motion to take judicial notice of the order is **DENIED.**

### III.ATTORNEY'S FEES

To a prevailing plaintiff following a FLSA action, FLSA provides a "reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  This Court must ensure that the fee be "reasonable."  *Id.*; *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir. 2004).  The starting point for an attorney's fee calculation is the "lodestar" method: multiplying the "number of hours reasonably spent on the case by an attorney times a reasonable hourly rate."  *Moore*, 355 F.3d at 565.  Then, "[t]hat amount may . . . be adjusted upwards or downwards, as the district court finds necessary under the circumstances of the particular case."  *Id.*  The party seeking a fee award must "submit evidence supporting the hours worked and rates claimed.  Where the documentation of hours is inadequate, the court may reduce the award accordingly."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  A fee is reasonable if it is "adequately compensatory to attract competent counsel yet . . . avoids producing a windfall for

---

[1] Case Numbers 2:15–cv–2473, 2:15–cv–2596, and 2:15–cv–2597.

lawyers." *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007) (internal quotations omitted) (emphasis omitted).

The Court may also tax the following costs: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; [and] (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." 28 U.S.C. § 1920. It is preferable that the prevailing party include supporting documentation. *Mikaloff v. Walsh*, No. 5:06–96, 2009 WL 901860, at *11 (N.D. Ohio Mar. 30, 2009).

Plaintiff seeks $**124,630** for attorney's fees and $**25,568.08** in costs, for a total of $**150,198.08**. Defendants have raised a number of objections to Plaintiff's fee petition, including to Plaintiff's requested rates, hours, and costs. (Doc. 79.) The Court will address each *seriatim*.[2]

### A. Reasonable Hourly Rates

In determining a reasonable hourly rate, "[t]he appropriate rate . . . is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Sykes v. Anderson*, 419 F. App'x 615, 618 (6th Cir. 2011) (internal quotations omitted). The market rate is "the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Gonter v. Hunt Value Co.*, 510 F.3d 610, 618 (6th Cir. 2007). Comparable skill and experience, of

---

[2] Because "[t]he Supreme Court has admonished that a request for attorney's fees should not result in a second major litigation," the Court does not find it necessary to have a hearing, as "it would only increase the amount of attorney's fees to be paid." *Ray v. Franklin County Bd. of Elections*, No. 2:08–CV–1086, 2009 WL 1542737, at *3 (S.D. Ohio June 2, 2009), quoting *Hensley*, 461 U.S. at 437 (internal quotations omitted).

course, means skill and experience in the specific area of law at issue in the case. *Snide v. Disc. Drug Mart, Inc.*, No. 1:11-cv-244, 2013 U.S. Dist. LEXIS 165584, *22-*25 (N.D. Ohio Oct. 30, 2013).

In making its determination, the court may "consider a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience from handling similar requests for fees." *Northeast Ohio Coalition for Homeless v. Husted* ("*NEOCH*"), No. 2:06-cv-896, 2014 WL 4829597, at *12 (S.D. Ohio Sept. 29, 2014) (vacated in part on other grounds) (quoting *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011)). The fee applicant bears the burden to "produce satisfactory evidence -- in addition to the attorney's own affidavits -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 (1984).

The Sixth Circuit has looked to six considerations in determining the reasonableness of a rate:

> 1) the value of the benefit rendered to the [client], 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides.

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974) (internal quotations omitted).

Plaintiff seeks an award based on a $325 hourly rate for Attorney Meaney, who has practiced for thirty or more years; a $275 hourly rate for Attorney Fortune, who has practiced for

six or more years; and a $200 rate for Attorneys Paragiou, White, Derr, and Shields, who have practiced for between three and five years.  (Doc. 78 at 5.)[3]

Defendants argue that Plaintiff's rates are unreasonable and advocate for a rate of $225 per hour for Meaney and $125 per hour for Fortune.  (Doc. 79 at 25-29.)  Defendants do not propose rates for the remaining timekeepers, although they argue that the associates' rates are too high and not properly substantiated.  (*Id.*)

### 1.  Meaney

In advocating for a rate of $325 per hour for Meaney, Plaintiff claims that Attorney Meaney had been awarded a fee of $325 per hour in the Court of Claims case *Moscato v. The Ohio State University*, Case Number 2011-06552.  (Doc. 78 at 2, 4.)  Plaintiff also cites and attaches the Ohio State Bar Association's report, "The Economics of Law Practice in Ohio in 2013" ("OSBA Report"), arguing that "the rates for Meany . . . are commensurate with other Columbus practitioners with thirty plus years of experience . . . in three to seven-attorney firms practicing Employment Law (Labor)."  (Doc. 78 at 5; Doc. 78-2.)

Defendants argue that Plaintiff has given paltry justification for his rate.  Plaintiff justifies Meaney's rate by stating that he has practiced law for thirty-plus years and that he has litigated one Ohio Court of Claims case.  In that case, *Moscato v. The Ohio State University* (Case Number 2011-06552), the court purportedly granted Meaney a $325 rate in a case related to

---

[3] The Court summarizes the rate request as follows:

| Timekeeper | Rate |
| --- | --- |
| Meaney | $325 |
| Fortune | $275 |
| Parigiou | $200 |
| White | $200 |
| Derr | $200 |
| Shields | $200 |
| Staff | $85 |

retaliation, age/disability discrimination, and wrongful termination.  (Doc. 78 at 2.)  *Moscato* does not relate to the FLSA, wage and hour claims, breach of contract, or a hostile work environment, however, so it is not particularly helpful to the Court's analysis.

Defendants point out that Meaney's online biography highlights expertise in franchisor/franchisee issues and does not even list labor and employment litigation as an area of law in which he practices.  (Doc. 79 at 28.)  Upon the Court's own inspection, Meaney's bio focuses on franchisor/franchisee issues (his "Areas of Practice" are Franchise Law and Business Law), but he also lists "[e]mployment law counseling and litigation" under the heading "Professional Information."  Zaino Law Group, Attorneys, James A. Meany, http://www.zainolawgroup.com/About/James-A-Meaney.shtml, last visited March 23, 2017.

Even if Meaney specializes in employment litigation, a $325 rate may be too high.  According to the OSBA Report,[4] which both parties cite in support of their proposed rates, $325 per hour is well above the median rate for an attorney practicing in a firm: (a) in suburban Columbus; (b) with twenty-six to thirty-five years of practice; (c) specializing in labor and employment law; and (d) as a partner in a small firm of two-to-seven attorneys.  OSBA Report, Exs. 46-47.

Plaintiff has not met her burden to "produce satisfactory evidence . . . that the requested rate [for Meaney is] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum v. Stenson*, 465 U.S. 886, 896 (1984).  She has cited one, tangentially related case in which he was awarded this rate, as well as the OSBA guidelines which suggest that the rate is too high.

---

[4] Despite certain drawbacks, the Sixth Circuit permits reference to state bar association reports in determining reasonable attorney rates.  *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 619 (6th Cir. 2007) (permitting reference to state bar survey in determining reasonable rates); *but see The Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 719 (6th Cir. 2016) (validating this Court's rejection of referencing the OSBA Report).

Based on the "part[ies'] submissions, . . . state bar association guidelines, and its own knowledge and experience from handling similar requests for fees," *NEOCH*, 2014 WL 4829597, at *12 (internal quotations omitted), and in the absence of evidence provided by Plaintiff, the Court finds that an hourly rate of **$234.50** is reasonable for Meaney.  The Court arrives at this number by averaging the median rates for factors (a) through (d), *supra*, all of which are characteristic of Attorney Meaney.[5]

### 2.  Fortune

Perhaps because Attorney Fortune devoted the greatest number of hours to her case, Plaintiff focuses the bulk of her efforts on justifying his requested rate of $275 per hour.  In support, Plaintiff attaches the declaration of Attorney Fortune.  (Doc. 78-3.)  At the time of Plaintiff's Motion for Attorney's Fees, Fortune had been practicing law for "six-plus years."  (*Id.* at ¶ 5; Doc. 78 at 5.)

She also claims that Fortune had been awarded $200 per hour in the Franklin County Court of Common Pleas in *Mers, Inc. v. Curtis Davis*, Case Number 10-cv-9493.  (Doc. 78 at 2, 4.)  Plaintiff does not argue that this case is employment-related.  Nor does she attach any documentation supporting this $200 per hour award.  Plaintiff does, however, attach an affidavit sworn by an employment lawyer, John S. Marshall, who opined that Mr. Fortune's requested $275 hourly rate was "within the fair and reasonable market value for the services rendered by an attorney of similar background and experience in this type of litigation in the Franklin County, Ohio area, which [he] believe[s] is in the $250.00 to $275.00 range."  (Doc. 80-6 at ¶ 8.)

---

[5] According to the OSBA Report, the median rates are as follows: (a) $200 for an attorney practicing in suburban Columbus; (b) $225 for an attorney with twenty-six to thirty-five years of practice; (c) $288 for an attorney specializing in labor and employment law; and (d) $225 for a partner in a small firm of two-to-seven attorneys.  OSBA Report, Exs. 46-47.

Both parties point to the OSBA Report—Plaintiff to argue that the rate is commensurate with other, similarly-situated attorneys, and Defendants to argue that it is not.  (Doc. 78 at 5; Doc. 78-2.)  On the Court's review, the OSBA Report indicates that the $275 request is well above the median rate for an attorney practicing in a firm: (a) in suburban Columbus; (b) with six to ten years of practice; and (d) as a partner in a small firm.  OSBA Report, Exs. 46-47.  A rate of $275 is below the median ($288) for labor and employment law specialists, however.  OSBA Report, Ex. 47.

Plaintiff cites a number of cases that she argues show Fortune's specialty in labor and employment law: *Miller, et al. v. Food Concepts International, LP, et al.*, 2:13-cv-00124, *Nicholas B. Valentine v. Food Concepts International, LP, et al.*, 12-cv-07120; *Justin Sowell v. Food Concepts International, LP, et al.*, 2:12-cv-543; *Mark Smith II v. Food Concepts International, LP, et al.*, 12-cv-7144; *Stephanie Swint v. Food Concepts International, LP, et al.*, 2:12-cv-480; and *Elizabeth Klimek v. Food Concepts International, LP, et al.*, 2:15-cv-02473. (Doc. 78-3 at ¶ 9.)  She also notes that employment litigation comprises more than eighty percent of Mr. Fortune's work, and that wage and hour-related claims comprise approximately eighty-five percent of Mr. Fortune's employment-related work.  (*Id.* at ¶ 7.)

Defendants argue that all of the cases Attorney Fortune cites as experience are related to this one.  (Doc. 79 at 27.)  They note that many of these cases were filed after Autrey's, and they suggest that later-filed cases should not factor into the rate for an earlier-filed case.  (*Id.*) Though this argument has some logical appeal, Defendants cite no cases for the proposition. (*Id.*)

Based on the "part[ies'] submissions, . . . state bar association guidelines, and its own knowledge and experience from handling similar requests for fees," *NEOCH*, 2014 WL

11

4829597, at *12 (internal quotations omitted), the Court finds that an hourly rate of **$229.33** is reasonable for Fortune.[6]  Mr. Fortune has spent a considerable amount of time on Plaintiff's case, although the outcome represents "only minimal relief."  (Doc. 78-3 at ¶ 3.)  The value of the benefit rendered to Plaintiff, therefore, was slight.  The Court does not wish to deter attorneys from taking cases like Plaintiff's, however.  The Court believes that an hourly rate of $229.33 represents an appropriate balance between society's interest in vindicating wage and hours plaintiffs' rights, with the value Fortune actually rendered to Ms. Autrey.  The rate of $229.33 also reflects Fortune's having taken Ms. Autrey's case on a contingency fee basis, the complexity of the litigation, and his approximately six-years' experience in the field.

### 3.  Associates

Plaintiff presents no evidence supporting the requested $200 rates of attorneys Parigiou, White, Derr, and Shields, except that they are associates in Attorney Fortune's law firm with between three and five years of experience.  (Doc. 78 at 5.)  Plaintiff does not disclose whether these associates have experience in employment litigation.

Defendants do not suggest a different rate for the associates, although they cite to the OSBA Report, which indicates a median rate for mid-level associates of $175 per hour.  (Doc. 79 at 28; OSBA Report Ex. 46.)

Plaintiff has not met her burden to "produce satisfactory evidence . . . that the requested rate [for the associates is] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum*, 465 U.S. at 896. Based on the "part[ies'] submissions, . . . state bar association guidelines, and its own knowledge

---

[6] This rate represents the average, as set forth in the OSBA Report, of the median rates for: (a) attorneys with between six and ten years of practice, which is $200; (b) attorneys specializing in labor and employment law, which is $288; and (c) attorneys practicing in suburban Columbus, which is $200. OSBA Report, Exs. 46-47.  It is unclear to the Court what practice classification to apply to Mr. Fortune, so the Court does not factor that into the calculation.  *Id.*, Ex. 47.

and experience from handling similar requests for fees," *NEOCH*, 2014 WL 4829597, at *12 (internal quotations omitted), the Court finds that an hourly rate of **$175** is reasonable for the associates.

### 4. Staff

Plaintiff requests a rate of $85 per hour for the assistance of "various law legal clerks and legal assistants." (Doc. 78 at 2.) Defendants do not suggest a different rate. (Doc. 79.) Therefore, to the extent such fees are reasonable, the Court will apply an $85 per hour rate.

In summary, the Court will apply the following rates:

| Timekeeper | Hourly Rate |
|---|---|
| Meaney | $234.50 |
| Fortune | $229.33 |
| Parigiou | $175 |
| White | $175 |
| Derr | $175 |
| Shields | $175 |
| Legal Assistants | $85 |

### B. Hours Reasonably Expended

In determining the hours reasonably expended, "[t]he question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief requested. Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1173 (6th Cir. 1990). Attorneys seeking fees must "maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended on the case" and "should exercise billing judgment with respect to hours worked." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) (quoting *Wooldridge*, 898 F.2d at

1177) (internal quotation marks omitted).  The Court must "conclude that the party seeking the award has sufficiently documented its claim."  *Id.* (internal quotations omitted).

The Court need not "achieve auditing perfection[.]"  *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).  Indeed, "[t]here is no precise rule or formula for making these determinations."  *Hensley*, 461 U.S. at 436.  In lieu of line-by-line reductions, the Court "may implement an 'across-the-board reduction by a certain percentage.'"  *Project Vote v. Blackwell*, No. 06-CV-1628, 2009 U.S. Dist. LEXIS 34571, 2009 WL 917737, at *6 (N.D. Ohio Mar. 31, 2009) (citing *Alliance Int'l, Inc. v. United States Customs Serv.*, 155 F. App'x 226, 228 (6th Cir. 2005)).  The Court may also "take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."  *Fox*, 131 S. Ct. at 2216.

Plaintiff seeks remuneration for 449.81 attorney hours and 45.30 staff hours spent prosecuting this case.  (Doc. 78 at 2-3.)  Specifically, Plaintiff seeks payment for 7.6 hours spent by Attorney Meaney, 435.88 hours spent by Attorney Fortune, 6.33 hours spent by the associates, and 45.3 hours spent by staff.  (*Id.* at 5-6.)

Plaintiff states that the lodestar method would result in a fee request of $145,713, although adding the rates and hours given by Plaintiff actually results in a total of $127,453.[7] (Doc. 78 at 2, 5-6.)  In recognizing that "attorneys can always practice more efficiently," Plaintiff then offers to reduce the request by $24,713 (*id.* at 2), $22,110 (*id.* at 5), or $6,453.50 (*id.* at 6), depending on which page of the motion the Court views.  Plaintiff lands on a fee

---

[7] The total request may be summarized in as follows:

| Timekeeper | Rate | Hours | Total |
|------------|------|-------|-------|
| Meaney | $325 | 7.6 | $2,470 |
| Fortune | $275 | 435.88 | $119,867 |
| Associates | $200 | 6.33 | $1,266 |
| Staff | $85 | 45.3 | $3,850 |
| **Total** | | **495.11** | **$127,453** |

request of $121,000, which is $6,453.50 less than the Court's lodestar calculation.  Plaintiff also requests an additional three percent of the total award as compensation for prosecuting the attorney's fee motion.  *Auto Alliance Int'l, Inc. v. United States Customs Serv.*, 155 F. App'x. 226, 229 (6th Cir. 2005) (recovery for prosecuting fees motion "should not exceed three percent of the hours in the main case which is decided without trial.").  Therefore, Plaintiff requests an additional $3,630 for this fees motion, for a total fee request of $**124,630**.  (Doc. 78 at 6.)

Defendants claim that Plaintiff's requested hours and time entries are unreasonable to the extent they include: (1) pre-claim time and time spent on other matters; (2) block-billed time entries, duplicative fees, and improper timekeepers; (3) excessive fees; (4) inadequate detail; (5) purely administrative work; and (6) entries related to unsuccessful actions, Plaintiff's non-compliance or incompetency.  Defendants also attack the proportionality of a $124,630 fee to a $1,100 recovery by Plaintiff.

### 1. Pre-Claim Time and Time Spent on Other Case-Related Matters

Plaintiff's case is one of a number of related cases against Defendants—indeed, this Court is presiding over or has presided over more than a dozen such cases.  Attorney Fortune has represented Autrey as well as these other plaintiffs, and the plaintiffs have shared certain costs related to this litigation.  (*See* Doc. 80-7, an email discussing the method by which counsel allocated attorney time among the plaintiffs in this case and the related cases.)

Defendants argue that Plaintiff billed time properly attributable to certain of these other cases.  (Doc. 79 at 5-8.)  For example, Plaintiff seeks fees for time beginning in September, 2011, including time spent in telephone conferences with defense counsel.  (Doc. 78-1.)  Plaintiff Autrey did not file her complaint in this case, however, until January 11, 2013, (Doc. 1-1), and defense counsel did not communicate with Fortune about Autrey's case until 2013.  (Doc. 7 at

6.)  By October, 2011, however, Attorney Fortune *had* filed the complaint of another plaintiff, Justin Sowell.  In 2012, Fortune filed complaints for Mark Smith, Nick Valentine, and Stephanie Swint.

Plaintiff also seeks fees related to depositions taken in other cases.  In late 2012, Fortune deposed Ed Linihan and Justin Sowell.  Fortune also deposed Autrey, as well as Oscar Hernandez, in support of Mark Smith's case.  Plaintiff seeks fees in Autrey's case for these depositions, which Defendants claim are improper.  Plaintiff offers no response.  (Doc. 80 at Pageid # 1575.)

The Court finds that it is unreasonable to tax pre-claim fees.  Because it is unclear from the documentation exactly when Plaintiff's counsel began litigating for Autrey rather than (or addition to) Mark Smith, Justin Sowell, Nick Valentine, and Stephanie Swint, the Court finds that a reduction in **Attorney Fortune's time** by **fourteen hours** for pre-claim time to be appropriate.

The Court does not find taxing fees related to depositions taken in other cases, however, to be unreasonable, if those fees directly benefited Plaintiff.  *O'Brien v. Ed Donnelly Enterprises, Inc.,* 575 F.3d 567, 577 (6th Cir. 2009) (allowing fees related to depositions taken in another case, but not without a "specific showing of benefit" to the plaintiffs in the instant case.) Because Plaintiff has not made any specific showing that the depositions taken in other cases directly benefitted Plaintiff, the Court finds that it is appropriate to reduce Attorney Fortune's time by **eleven hours**.

### 2.  Block-Billed Entries, Duplicative Fees, and Improper Timekeepers

Defendants argue that Plaintiff has improper block-billed entries, that Plaintiff has billed for duplicative work, and that Plaintiff has billed for work conducted by improper timekeepers. In general, the Court disagrees.

First, Defendants argue that Plaintiff has block-billed entries that "make[ ] it inherently difficult to determine the reasonableness of billing entries." (Doc. 79 at 8.) Plaintiff offers no response. (Doc. 80 at Pageid # 1575.) The Court finds, upon its own review, that, while the occasional time entry is block-billed, most are not. In most cases, when an entry contains multiple tasks, the description breaks down how much time was spent on each task. (*See, e.g.*, entry for 11/6/13, Doc. 79-2, at Pageid # 1479.) Therefore, the Court will not deduct time for block billing.

Second, Defendants argue that Plaintiff has billed time for duplicative work. (Doc. 79 at 24-25.) Having reviewed Plaintiff's counsel's time records, the Court finds that there was no unnecessary duplication.

Finally, Defendants argue that Plaintiff should not have billed for time spent by Clint R. White, Ailaterini Paragiou, Nicole E. Derr, and Jessica Shields, who are F&A LLC associates who did not enter appearances. (Doc. 79 at 25; Doc. 80 at Pageid # 1578.) These attorneys billed a total of 6.33 hours. (*Id*.) Defendants cite no cases for the proposition that Plaintiff should not bill for work by attorneys who did not enter appearances—indeed, attorneys often receive compensation for hours spent on the case by paralegals, who do not enter appearances. *See Imwalle*, 515 F.3d at 552. Furthermore, "there is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not reasonably doing the same work and are being compensated for the distinct contributions of each lawyer."

17

*NEOCH*, 2014 WL 4829597, at *5 (vacated in part on other grounds). The Court finds that it was reasonable for associates to spend 6.33 hours working on the case.

### 3. Excessive Fees

In light of the fact that Autrey's case is very similar to the cases of nine other plaintiffs, Defendants argue that Plaintiff's fees are excessive. (Doc. 79 at 9-10.) For example, Plaintiff claims: (a) five hours to draft a complaint that is identical to those of complaints that were already drafted; (b) .4 hours to attend a short deposition for the benefit of ten plaintiffs; (c) 46.5 hours reviewing Defendants' document production in Autrey's case, when the documents reviewed are similar to those in each of the nine other cases; (d) 41.9 hours responding to Defendants' first set of interrogatories and requests for production of documents, when those responses were identical across all ten cases; and (e) 9.8 hours preparing a third set of interrogatories and requests for production that Plaintiff never even served on Defendants. (*Id.*)

Having reviewed Plaintiff's time records, the Court finds Defendant's argument meritorious. In addition to the above examples of fees that are excessive when applied to one plaintiff, rather than ten, the Court adds a few of its own: (a) more than six hours to prepare her first amended complaint, which was virtually identical to those of the nine other plaintiffs; (b) 3.4 hours to "draft causes of action" for the same first amended complaint; (c) 1.8 hours to review an order by the magistrate judge; (d) two hours answering discovery that had not yet been served; (e) 1.8 hours to review a second order by the magistrate judge; (f) 1.2 hours to send an email to defense counsel; (g) 6.8 hours preparing settlement documents; and (h) 2.3 hours to email with Meaney. (Doc. 79-2 at Pageid # 1466, 1468-72.) The vast majority of these excessively-billed entries are those of Attorney Fortune.

Plaintiff has not provided the detail necessary to show that these hours, and others, were reasonably spent on Autrey's case alone.  Plaintiff points to the 6,000 discovery requests she propounded in the ten cases, and the 7,000 documents (comprising more than 60,000 pages that required conversion to a readable electronic format) that Defendants provided Autrey and the other plaintiffs in response.  (Doc. 80 at Pageid # 1580.)  She also notes that she produced nearly 1,000 documents of her own and responded to Defendants' interrogatories.  (*Id.*)  With the possible exception of Plaintiff's document production (although Plaintiff has not provided the detail necessary to so find), these actions, too, pertain to ten cases.

Because Plaintiff has billed excessive fees, particularly in a case that ended before summary judgment briefing, the Court finds that a **thirty-three (33) percent reduction in Attorney Fortune's hours** to be necessary.  *See Imwalle*, 515 F.3d at 552 (Attorneys seeking fees must "maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended on the case" and "should exercise billing judgment with respect to hours worked.")  (internal quotation marks omitted).

### 4.  Adequate Detail

Defendants argue that 238 of Plaintiff's time entries contain vague descriptions that "failed to even identify the general subject matter involved, documented with such vague descriptions as 'research,' . . . and 'office conference.'"  *Black v. Lojac Enterprises, Inc.*, No. 96-5654, 1997 WL 377051, at *3 (6th Cir. July 2, 1997).  For example, an entry for January 22, 2014 provides "call with J. Meaney regarding case."  (Doc. 79-2 at Pageid # 1470.)  Other examples are: "Review and respond to Defendant counsel emails" (*id.*); "Meeting w/RA regarding clients matter" (*id.* at Pageid # 1474); "call with client" (*id.* at Pageid # 1475);

"Review Defendant's POD" (*id.* at Pageid # 1476); "Review POD" (*id.*); and "meet with experts" (*id.* at Pageid # 1476).  Plaintiff fails to offer any response.  (Doc. 80 at Pageid # 1575.)

Entries like these "clearly provide little guidance in ascertaining the purpose of the work during the time claimed and do not merit an award." *Black*, 1997 WL 377051, at *3 (citing *Hensley*, 461 U.S. 437, n.12 ("at least counsel should identify the general subject matter of his time expenditures").  The Court finds that the vagueness of Plaintiff's time entries requires a **ten (10) percent** reduction in Attorney Fortune's hours.  Plaintiff did not "sufficiently document its claim" by "maintain[ing] billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended on the case." *Imwalle*, 515 F.3d at 552 (internal quotations omitted),

### 5.  Purely Administrative Work

Defendants argue that Plaintiff should not be compensated for "purely clerical or secretarial tasks that require no legal skill or training[.]"  (Doc. 79 at 11.)  Defendants are correct that "purely clerical or secretarial tasks should not be billed (even at a paralegal rate), because '[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.'"  *Gibson v. Scott*, No. 2:12-cv-11282014 U.S. Dist. LEXIS 20576 (S.D. Ohio Feb. 19, 2014).  Plaintiff does not offer a response or a justification for hours spent on tasks such as: "case file review and update" (Doc. 79 at Pageid # 1464); "text with RA to schedule client meeting regarding settlement" (*id.* at Pageid # 1465); "filing complaints" (*id.* at Pageid # 1468); entry related to IT problems (*id. at* Pageid # 1469); "send client fax forms for signature" (*id.* at Pageid # 1476); "send subpoenas" (*id.*); and "prepare WTF letters to Def for mailing" (*id.* at Pageid # 1479).  (Doc. 80 at Pageid # 1575-76.)

Entries such as these properly belong in office overhead. *Gibson*, 2014 U.S. Dist. LEXIS 20576 at 10-11 ("A 'purely clerical or secretarial' activity is not billable at a paralegal's rate, or at any rate at all, because such tasks are included in office overhead.") Therefore, in exercising its discretion to tax a reasonable number of hours, the Court must reduce the requested hours as follows: **reduce by 45.3 hours** the time spent by "various law legal clerks and legal assistants"; **reduce by fifteen (15) hours** the time spent by Fortune; and **reduce by two (2) hours** the time spent by the various associates.

### 6. Entries Related to Unsuccessful Actions, Plaintiff's Non-Compliance or Incompetency

Defendants seek to reduce fees related to unsuccessful actions, Plaintiff's non-compliance or incompetency. (Doc. 79 at 16-24.) Defendants point, in particular, to the "amended complaint debacle," billing entries related to disqualified expert Stephen C. Oberhousen, and discovery and other motions practice. Defendants also highlight the limited $1,100 recovery achieved by Plaintiff.

In response, Plaintiff claims that she made a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. She claims that the "vast majority" of her requested fees stem from Defendants' "wrongful" or "intentional" acts "intended to prevent plaintiff Autrey from obtaining relevant discovery in her matter." (Doc. 80 at Pageid # 1576.) Plaintiff also contends that she did not "fail to meet her discovery obligations, spend hours preparing for and attending a show-cause hearing on which they were unsuccessful, or engage in the filing of frivolous discovery motions." (*Id.* (internal quotations omitted)). Plaintiff takes issue with Defendants' characterization of her action as of limited success, arguing that she "achieved full success and received complete relief when, on April 3, 2016, she accepted the Defendants' Joint Federal Rule

21

68 Offer of Judgment." (*Id.*)  This acceptance triggered the requirement for Defendants to pay a reasonable attorney's fee.  (*Id.* at Pageid # 1576-77.)

Plaintiff also takes issue with Defendants' 229 line-item objections to his time entries, claiming that Defendants allege "multiple alleged objections in an apparent attempt to 'throw it all up on the wall and see what sticks.'"  (*Id.* at Pageid # 1577.)  Plaintiff does not respond to the line-item objections.  (*Id.*)

The standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge*, 898 F.2d at 1173.

Defendants have the better argument.  The Court has seen Plaintiff's case through its various steps and missteps.  The parties and the Court were enmeshed in extensive, unnecessary litigation because Plaintiff failed to file a complaint that met the liberal pleading standard of Federal Rule of Civil Procedure 8.  Instead of filing a complaint laying out Autrey's claims, Plaintiff's counsel filed identical complaints in ten cases.  When the Court ordered Plaintiffs to file complaints that were specific to each plaintiff, counsel failed to do so.  Ultimately, it took four orders from the Court for Plaintiff's counsel to file the operative complaint.  Because the operative complaint *still* failed to meet basic pleading standards, the magistrate judge had to issue an order to show cause, hold a hearing, conduct an exhaustive review of the complaint, and dismiss two of five of Plaintiff's claims.  The saga did not end after the magistrate judge pared down the operative complaint; Plaintiff attempted to file a second amended complaint based on Defendants' alleged discovery misconduct.  (*See* Doc. 61.)  Because Plaintiff "failed to identify with specificity what discovery requests were improperly responded to or what specific facts were learned from discovery justifying the need to amend at this late date," the court denied her

motion to amend.  (*Id.* at 8-9.)  A reasonable attorney would not have believed this work to be "reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge*, 898 F.2d at 1173.  A reasonable attorney would have filed a complaint in the first instance that met the basic pleading requirements.

Moreover, Plaintiff's counsel expended considerable time and expense in hiring Stephen Oberhousen, an "expert" in calculating Plaintiff's, as well as nine other Plaintiffs', FLSA damages.  In disqualifying Mr. Oberhousen, the Court found that "he is not an expert in the FLSA and he has never written or published any articles regarding wage-and-hour issues or damages calculations.  He is not a member of any relevant professional organizations nor does he hold any pertinent professional licenses."  (Miller v. Food Concepts, Case No. 2:13-cv-124, Doc. 147 at 3.)  He works for a provider of underground utility locating services, "inspect[ing] job sites, determin[ing] whether there are abnormal operating conditions at the sites, and mark[ing] and flag[ging] utilities."  (*Id.*)  Prior to this job, he worked as a "salesman for two car dealerships."  (*Id.* at 4.)  He had also worked with invoices and as a business development manager, and in Human Resources.  (*Id.*)  A reasonable attorney would not have hired a FLSA damages expert who has zero qualifications in the area of FLSA damages.  *Wooldridge*, 898 F.2d at 1173.  Plaintiff's fees must be reduced accordingly.[8]

Plaintiff's counsel also engaged in an unnecessary motion for prejudgment attachment, which the Court denied due to Plaintiff's counsel's failure to set forth any reasons why prejudgment attachment would be appropriate.  (Doc. 70 at 5.)  From the Court's vantage point, this exercise appeared to be a tactic to improve settlement prospects.

---

[8] The Court will not reduce Plaintiff's requested hours because counsel consulted with additional parties who may or may not be deemed "experts" in the litigation.  A reasonable attorney must consult with outside parties upon occasion, including, for example, a party involved in e-discovery.

In addition, Plaintiff's counsel spent time preparing discovery requests that did not comply with the federal rules.[9]  The time spent preparing 182 requests for admission, rather than 40, a required by the rules, should not be taxed to Defendants.

A reasonable attorney would not believe this "work to be reasonably expended in pursuit of success at the point in time when the work was performed:" (a) taking the Court and defense counsel in circles for months because of his refusal or inability to file a complaint that is compliant with Federal Rule of Civil Procedure 8; (b) hiring and working with an "expert" with absolutely no expertise; (c) engaging defendants and the Court in a useless exercise in seeking prejudgment attachment; or (d) preparing wildly noncompliant discovery requests.  *Wooldridge*, 898 F.2d at 1173.  Because each of these actions took a significant amount of time, the Court finds it necessary to reduce Attorney Fortune's hours by a significant margin—**ten (10) percent.**

### 7.  Proportionality of a $124,630 Fee Request to Plaintiff's Recovery of $1,100

Finally, Defendants highlight the limited $1,100 recovery achieved by Plaintiff, and seek to reduce the fees based on Plaintiff's limited success.  (Doc. 179 at 29-30, 33-34.)  Plaintiff responds that a fee need not be proportional because it must vindicate the purposes behind FLSA.  *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 503 (6th Cir. 1984).  Plaintiff argues that, by accepting the offer of judgment, she has achieved full success.

The Sixth Circuit has found, however, that "[a]n award based on the total number of hours reasonably expended on the litigation might . . . result in an excessive amount if the claimant has achieved only partial success."  *Imwalle*, 515 F.3d at 552 (citing *Hensley*, 461 U.S. at 435).  Indeed, the degree of success obtained is "the most critical factor governing the

---

[9] The Court will not reduce Plaintiff's requested hours based on her unsuccessful motion to compel documents, or otherwise to obtain discovery.  A reasonable attorney may have felt it necessary to ensure that it is receiving all pertinent discovery.

reasonableness of a fee award." *Smith v. Service Master Corp.*, 592 F. App'x. 363, 370–71 (6th Cir. 2014). If "a plaintiff obtains 'limited success, the district court should award only that amount of fees that is reasonable in relation to the success obtained." *Id.* (internal quotation omitted).

When Plaintiff has only achieved partial success, the Court addresses: "(1) whether the claims on which the plaintiff failed to prevail were or were not related to the claims on which he or she succeeded, and (2) whether the plaintiff achieved a sufficient degree of success to render the hours reasonably expended a satisfactory basis for awarding attorney fees." *Imwalle*, 515 F.3d at 552, (citing *Hensley*, 461 U.S. at 434.)

Although the claims on which Plaintiff failed to prevail were arguably "related to the claims on which . . . she succeeded," Plaintiff did not "achieve[ ] a sufficient degree of success to render the hours reasonably expended a satisfactory basis for awarding attorney fees." *Imwalle*, 515 F.3d at 552, (citing *Hensley*, 461 U.S. at 434.)

In the operative complaint, Plaintiff sought the following relief:

a) Declaratory judgment that Defendant has engaged in creating and maintaining a hostile work environment on the basis of other Defendant Targeted Employees race and gender.

b) Declaratory judgment that the Defendant has engaged in retaliation against the Plaintiff for engaging in protected activity;

c) Declaratory judgment that the Defendant has engaged in race discrimination in employment against Plaintiff or the other Defendant Targeted Employees.

d) Judgment against Defendants, jointly and severally, for compensatory damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000), for emotional distress, humiliation, embarrassment and general loss of enjoyment of life;

c) An award of equitable relief for unpaid wages and pre-judgment interest thereon from the date Plaintiff was owed wages,

f) An award of damages, jointly and severally, recoverable for Plaintiffs emotional distress including apprehension of impending injury, pain and suffering, past and future medical expenses, and lost income;

g) An award of punitive damages, jointly and severally, in an amount in excess of Twenty-Five Thousand Dollars ($25,000) to which this Court deems Plaintiff is entitled;

h) An award of her reasonable attorneys fees, costs and expenses incurred to prosecute this action;

i) An award of liquidated damages on appropriate claims; and

j) Any and all additional relief as this Court deems just and proper under the circumstances.

(Doc. 34 at 44-45.)  The offer of judgment, which Plaintiff accepted, provided Plaintiff with

$1,100.  (Doc. 76-1.)  While it did include attorney's fees, it did not include any of the other

relief sought, including, for example, punitive damages, equitable relief, or liquidated damages.

(*Id.*)

Taking into account the Court's "overall sense of [the] suit," *Fox*, 131 S. Ct. at 2216, a

reduction of the hours expended and the fee award is warranted because Plaintiff did not

"achieve[ ] a sufficient degree of success to render the hours reasonably expended a satisfactory

basis for awarding attorney fees."  *Id.*, (citing *Hensley*, 461 U.S. at 434.)  After more than three

years of litigation, Plaintiff received a small fraction of the relief she sought.  Moreover, as

detailed above, Plaintiff's counsel engaged in a variety of unnecessary, time-consuming and

expensive maneuvers that did not ultimately achieve success for Plaintiff.  Therefore, the Court

finds that a reduction in the total fee award of **fifty (50) percent** is necessary.  *See Abernathy v.*

*Corinthian Colleges, Inc*., No. 2:10–CV–131, 2014 WL 4272723, at *24 (S.D. Ohio Aug. 29,

2014), *aff'd*, 2014 WL 4829612 (S.D. Ohio Sept. 29, 2014) ("In reaching this fee amount, the

Court concludes that this award effects "rough justice." *See Fox,* 131 S.Ct. at 2216. Although

this across-the-board reduction is significant, the fee award is nevertheless substantial in light of

the extensive billing deficiencies and modest success at trial."); *Ohio Right To Life Soc., Inc. v. Ohio Elections Comm'n*, 2013 WL 5728255, at *16 (S.D.Ohio Oct. 22, 2013) ("Review of Plaintiff's fee documentation makes clear that vast majority of the 780.75 hours expended were unrelated to its pursuit of the successful claims."); *Bell v. Prefix, Inc.,* 784 F.Supp.2d 778, 790 (E.D. Mich. 2011) (applying an eighty-percent reduction to fees requested because "the excessive billing is so egregious" and also noting that the 80% reduction was likely "generous").

In summary, based on the foregoing analysis, the Court finds the following to be a reasonable attorney's fee in this case:

| Timekeeper | Rate | Hours | Fee |
|---|---|---|---|
| Meaney | $234.50 | 7.6[10] | $1,782.20 |
| Fortune | $229.33 | 164.86 | $37,807.34 |
| Associates Parigiou, White, Derr, and Shields | $175 | 4.33 | $757.75 |
| Legal Assistants | $85 | 0 | $0 |
| Less across-the-board reduction of 50% for limited success | | | ($20,173.65) |
| Plus "fees for fees" of 3%[11] | | | $1,815.63 |
| **Total** | | | **$21,989.27** |

The Court believes that this fee structure appropriately balances the goals of FLSA in attaining competent counsel with the admonition not to let the attorney's fee provision provide a windfall to attorneys. *Gonter*, 510 F.3d at 616.

---

[10] In not reducing the number of hours for Meaney, the Court notes that Meaney exercised considerable billing judgment. (*See* Doc. 78-1 at Pageid # 51-52.)
[11] The Court notes that the Sixth Circuit allows up to three percent of the hours in the main case for time spent preparing and litigating attorney's fees. *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986).

### C.  Costs

In addition to a reasonable attorney's fee, FLSA provides for costs to the prevailing

plaintiff.  29 U.S.C. § 216(b).  Plaintiff seeks remuneration for $25,568.08 in costs, including the

following:

| | |
|---|---|
| Filing Fee | $231.75 |
| Copy Charges | $2,675.00 |
| Deposition Transcripts | $2,136.10 |
| Postage Fees | $44.95 |
| Legal Research – Lexis Nexis | $2,878.63 |
| Expert Fees – Non-Testifying | $1,500.00 |
| Expert Fees – Testifying | $6,500.00 |
| Outside Counsel Fees Related to Defendants' Motion to Disqualify Plaintiff's Legal Counsel | $3,060.00 |
| Special Process Server Fees | $150.00 |
| Discovery Expenses – Cost of Plaintiff's Production of Electronic and Hardcopy Documents in Response to Defendants' Discovery Requests; Plaintiff's Cost of Converting Non-Standard Electronic Data Files and Hardcopy Data Files to Electronic .csv Files Useable by Plaintiff and Plaintiff's Experts | $6,050.50 |
| Plaintiff's Counsel's Mileage Expense | $64.58 |
| Travel Expenses | $253.82 |
| Facsimile Costs | $22.75 |
| **Total** | **$25,568.08** |

(Doc. 78 at 2-3.)

Defendants object to these costs, with the exception of $1,030.75: $49.45 for

"miscellaneous expenses," and $931.30 for deposition expenses.  (Doc. 79-3.)[12]  In particular,

Defendants object to costs associated with computer research, costs associated with expert

witnesses, and costs that are unsubstantiated.  (Doc. 79 at 31-32.)

First, Defendants object to costs associated with computer research.  Although research

costs for search engines such as Lexis may be recoverable "in some circumstances, the party

seeking such costs must establish that each entry is reasonably related to the issues raised in the

---

[12] It is unclear to the Court how Defendants reached the proposed $1,300.43 number in their opposition. (Doc. 79 at 32.)

case." *Liang v. AWG Remarketing, Inc*., No. 2:14-cv-00099, 2016 WL 428294, at *14 (S.D. Ohio Feb. 4, 2016) (citing *Smith v. Serv. Master Corp*., 592 F. App'x 363, 368–69 (6th Cir. 2014)). Plaintiff's evidence for her research costs consists of the date of research, the entry "Lexis Nexis," and the amount charged. (*See, e.g.*, Doc. 78-1, at Pageid # 39.) The Court is unable to determine the "actual cost of the online access or service," or whether the services claimed actually relate to Plaintiff's case rather than, for example, the cases of the dozen or so other plaintiffs counsel represents in related litigation. *Smith*, 592 F. App'x at 368. Therefore, the Court will not tax Plaintiff's Lexis costs.

Second, Defendants object to costs associated with expert witnesses. 29 U.S.C. § 216(b) does not allow this Court to reimburse Plaintiff for expert witness fees. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006) ("[N]o statute will be construed as authorizing the taxation of witness fees as costs unless the statute refers explicitly to witness fees." (internal quotation marks and brackets omitted)); *Gortat v. Capala Bros., Inc*., 795 F.3d 292, 296 (2d Cir. 2015) ("29 U.S.C. § 216(b) of the FLSA does not expressly address awards reimbursing prevailing plaintiffs for expert fees."); *Clark v. Shop24 Global LLC*, No. 2:12-cv-802, 2016 WL 3639893, at *13 (S.D. Ohio July 8, 2016). Therefore, the Court will disallow the costs associated with expert witnesses. *See also* S*chumacher v. AK Steel Corp. Ret. Acc. Pension Plan*, 995 F. Supp. 2d 835, 854 (S.D. Ohio 2014) (disallowing research costs because "[t]he fee petition does not explain the basis for the charge, the cost basis for the firm's Westlaw contract, or whether computerized research costs are routinely billed to their clients.")

Third, Defendants object to unsubstantiated costs. Although Defendants' papers are not crystal clear, these appear to include the remainder of Plaintiff's requested costs, with the exceptions noted above. Plaintiff does not explain, and attached no receipts or other

documentation to substantiate, mileage, travel expenses, facsimile costs, postage fees, discovery expenses, special process server fees, or copy charges.  Plaintiff has not shown that these costs relate to Plaintiff's case and not the cases of other plaintiffs that Fortune represents in related cases.  Plaintiff also has not shown that charges related to "[f]ees for exemplification and the costs of making copies of any materials," are "necessarily obtained for use in the case."  28 U.S.C. § 1920.  Therefore, the Court will not tax such costs.  *See Schumacher*, 995 F. Supp. 2d at 853-55.

With respect to outside counsel fees, Plaintiff argues that Defendants' Motion to Disqualify Plaintiff's Counsel, which this Court denied, required Plaintiff to hire Behal Law Group and John Gonzalez at a cost of $1,000.  (Doc. 80 at Pageid # 1578.)  It is unclear whether this $1,000 is in addition to or in lieu of the $3,060 Plaintiff claims for hiring outside counsel related to Defendants' Motion to Disqualify Plaintiff's Legal Counsel.  (Doc. 78 at 3.)  In any event, Plaintiff has attached no documentation to substantiate the claimed cost.  Because Plaintiff has not properly documented this claim, the Court will disallow these fees.  *Imwalle*, 515 F.3d at 552.

In sum, the Court awards **$1,030.75 in costs**, to include fees related to depositions and miscellaneous expenses, plus $**225** for filing the complaint in the Franklin County Court of Common Pleas.

**D.  Conclusion**

For the reasons stated above, Plaintiff's Motion for Attorney's Fees and Costs (Doc. 78)

is **GRANTED with modifications**.  Plaintiff is awarded **$21,989.27 in fees** and **$1,255.75 in**

**costs.**

**IT IS SO ORDERED.**


  /s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**


**DATED:  March 29, 2017**